STATE of Utah, Plaintiff and
Respondent,

v.

William FORSYTH, Defendant
and Appellant.

No. 15862.

Supreme Court of Utah.

Nov. 28, 1978.

Ronald R. Stanger, Provo, for defendant
and appellant.

Robert B. Hansen, Atty. Gen., Robert R.
Wallace, Asst. Atty. Gen., Salt Lake City,
for plaintiff and respondent.

PER CURIAM:

Defendant appealed from the denial of a
motion to dismiss a criminal charge of theft
by deception on the ground that he had
been once in jeopardy for that offense.
Greater detail is set forth in the concurring
opinion of Chief Justice Ellett.

1. *State v. Forsyth,* Utah, 560 P.2d 337.

Defendant has heretofore appealed his
conviction on the offenses charged to this
Court and his conviction was affirmed.[1] He
was then released by a federal district
judge in a habeas corpus proceeding. The
state refiled the charges and the defendant
then interposed his motion above referred
to, which was denied.

The denial of the motion to dismiss was
not a final judgment and no appeal can be
taken therefrom.[2] The appeal is dismissed
and the case is remanded for further pro-
ceedings. No costs awarded.

ELLETT, Chief Justice (concurring with
comments):

I concur but wish to add the following:

This attempted appeal illustrates the lack
of understanding of the law on the part of
the Federal District Court Judges. The
defendant was charged in the state court
with the crime of theft by deception. He
pleaded guilty and later undertook to with-
draw his plea. The district court refused to
permit the withdrawal of the plea and the
defendant appealed to this Court claiming
an abuse of discretion on the part of the
trial judge and of incompetence on the part
of the lawyer.

The record in the trial court showed the
following proceedings: (Mr. Bottum was
counsel for Mr. Forsyth.)

MR. BOTTUM: That's correct, Your
Honor. There has been plea bargaining in
accordance with the ABA standards which
we'll state to the Court.

THE COURT: Would you state those
now, please, Mr. Bottum?

MR. BOTTUM: Yes, Your Honor. It is
the intention of the defendant to change his
plea as to Count No. 1. It is the under-
standing between counsel that the State
will dismiss the remaining counts.

THE COURT: The information which is
in the file showing a filing date of August
21, 1975 contains five separate counts.

MR. BOTTUM: Yes, Your Honor.

2. U.C.A., 1953, Sec. 77-39-3.

THE COURT: Each of which constitute felonies of the second degree.

MR. BOTTUM: Yes, Your Honor.

THE COURT: Now your statement was to the effect that Mr. Forsyth intends to enter a plea of guilty to Count 1,—

MR. BOTTUM: Yes, Your Honor.

THE COURT: —at which time the State would move to dismiss II, III, IV and V?

MR. BOTTUM: Yes, Your Honor.

THE COURT: Now you did state, Mr. Bottum, that the plea bargaining—I don't like that term but everybody else uses it.

MR. BOTTUM: Negotiations, Your Honor?

THE COURT: Yes.—was in accordance with the American Bar Association standards?

MR. BOTTUM: Yes, Your Honor.

THE COURT: And I assume that the conclusion that both defendant or that the State came to was that this would be proper in the interest of justice, is that correct?

MR. UNGRICHT: Yes, Your Honor.

THE COURT: All right. Mr. Forsyth, if you'll come up here please. Your counsel has indicated, Mr. Forsyth, that you desire to change your plea ·from not guilty to guilty as to Count I of the Information in the file bearing a filing date of August 21, 1975. Count I, for the record and so that you'll be absolutely certain regarding the offense which in [sic] intend to plead guilty, I'm going to have the Clerk read the charge contained in Count I.

(WHEREUPON, the Clerk read Count I of the Information.)

THE COURT: Now, Mr. Forsyth, the penalty which might be imposed by the Court for the offense charged in Count I is not less than one nor more than 15 years in the Utah State Prison and a fine not to exceed $10,000. I want to be sure of that. Is that—

MR. BOTTUM: Second degree, Your Honor?

THE COURT: Second degree.

MR. ROYLANCE: I think that's right, Your Honor.

THE COURT: Just a minute. It is ten thousand: and a fine not to exceed $10,000. Whether or not you receive probation is not dependent upon your pleading guilty to this count. Your chances of probation are no greater and no less by reason of pleading guilty than if you are found guilty by a jury. And if anyone has promised you anything in the way of probation, you should dismiss it from your consideration in changing your plea because this court will determine and this court alone will determine whether or not you are placed on probation. And it will depend upon the information that is furnished to the Court, if you request it, that is if you request the time—if you request that the matter be referred, that will be dependent to a great extent upon the information which is furnished to the Court by the Adult Probation and Parole Department. Now do you understand that?

MR. FORSYTH: Yes, sir.

THE COURT: Now by pleading guilty to the offense charged you waive the right to a trial by jury. You understand that?

MR. FORSYTH: Yes.

THE COURT: And that plea of guilty has the same effect as far as your guilt is concerned, a finding of guilty is concerned, as if you were found guilty by a jury. Do you understand that?

MR. FORSYTH: Yes, sir.

THE COURT: A jury trial includes the right to be represented by counsel, it includes the right to have the witnesses who acuse you of this offense appear and testify and for you to cross examine them under oath. It includes the right to have the witnesses who may testify in your favor appear and the right for you to examine them. Do you understand that?

MR. FORSYTH: Yes, sir.

THE COURT: You are not required under the Constitution of the United States and the Constitution of the State of Utah to testify against yourself. In other words, you are protected against self-incrimina-

tion, if you do not desire to testify. Do you understand that?

MR. FORSYTH: Yes.

THE COURT: And it would be in a jury trial the responsibility and the duty of the State to prove each and every element of the offense which has been read to you beyond a reasonable doubt. Do you understand that?

MR. FORSYTH: Yes, sir.

THE COURT: And again, if you plead guilty to the offense, then the State no longer has the burden of proving each and every element of the offense beyond a reasonable doubt. You waive that requirement.

MR. FORSYTH: I want it repeated again. I didn't understand it.

THE COURT: All right, If you plead guilty to Count I, the State does not have the obligation to prove each and every element of that offense beyond a reasonable doubt; you have waived that right to have the State prove each and every element of that offense. Do you understand that?

MR. FORSYTH: Yes, sir. I understand it.

THE COURT: All right. Mr. Forsyth, do you intend to enter a plea of guilty to this offense because you are guilty or for some other reason?

MR. FORSYTH: For some other reason, sir.

THE COURT: What is that other reason?

MR. FORSYTH: Could I counsel with him just for a few minutes?

THE COURT: Yes, you may.

MR. BOTTUM: May I step outside for a moment, Your Honor?

THE COURT: You may.

(WHEREUPON, counsel stepped outside with his client)

THE COURT: I think we'll take a five minute recess. And during the recess will you inquire of Mr. Bottum how long he expects to be? We'll be in recess for five minutes.

(WHEREUPON, the Court recessed at 4:17 p.m. and reconvened at 4:23 o'clock p.m.)

THE COURT: All right. Mr. Forsyth, are your prepared to answer the last question?

MR. FORSYTH: Yes, sir.

THE COURT: And what is it? Are you pleading guilty because you are guilty or for some other reason?

MR. FORSYTH: I'm pleading guilty, sir.

THE COURT: Because you are guilty?

MR. FORSYTH: Yes, sir.

THE COURT: All right. Now, Mr. Forsyth, aside from the agreement of the State of Utah to move the Court to dismiss Counts II, III, IV, and V, if you plead guilty to Count I, has anyone promised you anything for your plea of guilty to Count I, aside from the agreement to move the Court to dismiss Count II, III, IV and V?

MR. BOTTUM: Yes, Your Honor. There is one other matter. There is another investigation that will be terminated.

THE COURT: Another investigation?

MR. BOTTUM: Yes.

THE COURT: And is that so, Mr. Ungricht?

MR. UNGRICHT: Yes, Your Honor. The State has agreed to that.

THE COURT: And is that in the interest of justice?

MR. UNGRICHT: Yes, Your Honor, we feel it to be.

THE COURT: No question about it in your mind?

MR. UNGRICHT: Yes, Your Honor, no question in my mind.

THE COURT: Do you concur, Mr. Roylance?

MR. ROYLANCE: Yes.

THE COURT: All right. Aside from that has anyone promised you anything?

MR. BOTTUM: You have to answer.

MR. FORSYTH: No, sir.

THE COURT: Has anyone threatened you with any consequences other than the pursuit of Counts II, III, IV and V and the other investigation if you did not plead guilty to Count I?

MR. BOTTUM: Has anybody threatened you?

MR. FORSYTH: No, sir.

THE COURT: Now is it your desire at this time then to withdraw your plea of not guilty to Count I and to substitute a guilty plea?

MR. FORSYTH: Yes, sir.

THE COURT: And do you withdraw your plea of not guilty?

MR. FORSYTH: Yes.

THE COURT: To the charge contained in Count I which has been read to you, what is your plea?

MR. FORSYTH: Guilty, sir.

THE COURT: The record will show that the not guilty plea has been withdrawn, that a guilty plea has been entered to Count I; that the guilty plea was entered voluntarily, that it was entered with a full and complete understanding of the rights waived by such plea; that it was done intentionally and done with the advice of counsel, and with a full understanding of the consequences of the plea.

This Court properly affirmed the trial court. (Utah, 560 P.2d 337 (1977)).

The defendant then secured a writ of habeas corpus from a judge of the lowest court in the federal judicial system and was released by that official on the ground that the petitioner in the case did not knowingly, voluntarily, or understandingly enter a guilty plea to the charge against him in the state court.

The rule of law is that when a court of competent jurisdiction has decided a matter within its authority, other courts will respect that ruling except on an appeal to a higher court.

The lowly federal district court has no right to ignore the determination of state courts; and the federal judges either do not understand or they refuse to follow the law that habeas corpus cannot be used as a substitute for an appeal. They also should know that no appeal lies to their courts from state court decisions.

If federal district judges continue to interfere officiously in state court matters, the state—federal relationship established by the constitution, and which until recently has served the nation so admirably, will be disrupted and the rights of the people to live in a lawful society will be thwarted.

The work load of state courts is doubled because of federal interference and in the federal courts the work load is magnified all out of proportion. If the lowest order of federal judges would confine their efforts and activities· to federal problems they would not need extra judges—in fact they could dispense with one half of those who now hold the office.

The egotism of those judges who think their own judgment in criminal matters is superior to that of a state supreme court is nothing short of amazing. Perhaps it is born of a frustration caused by the low position they hold in the federal system. Maybe it is due to the large salary they receive.

Unless such interference is voluntarily stopped, and if congress fails to rectify the evil, then the only recourse left to the people of the states is to move in the tracks of a "proposition 13" by way of a constitutional amendment.

James Madison in the Federalist Papers said:

The powers delegated by the proposed Constitution to the federal government are few and defined. Those which are to remain in the State governments are numerous and indefinite. The former will be exercised principally on external objects, as war, peace, negotiation, and foreign commerce; with which last the power of taxation will, for the most part, be connected. The powers reserved to the several States will extend to all the objects which, in the ordinary course of affairs, concern the lives, liberties and properties of the people, and the internal

order, improvement and prosperity of the State. (No. 45)

and Alexander Hamilton stated:

In like manner the judicial authority of the federal judicatures is declared by the Constitution to comprehend certain cases particularly specified. The expression of those cases marks the precise limits beyond which the federal courts cannot extend their jurisdiction, because the objects of their cognizance being enumerated, the specification would be nugatory if it did not exclude all ideas of more extensive authority. (No. 83)

These two gentlemen were of opposite political beliefs, but each was urging the adopting of the constitution and were correctly stating what the constitution would provide for if and when it would be adopted.

Thomas Jefferson foresaw the present attitude of the Federal courts when he wrote:

It has long, however, been my opinion, and I have never shrunk from its expression, . . . that *the germ of dissolution of our federal government is in the constitution of the federal judiciary; an irresponsible body,* (for impeachment is scarcely a scare-crow) working like gravity by night and by day, gaining a little to-day and a little to-morrow, and advancing its noiseless step like a thief, over the field of jurisdiction, until all shall be usurped from the States, and the government of all be consolidated into one. To this I am opposed; because *when all government, domestic and foreign, in little as in great things, shall be drawn to Washington as the centre of all power, it will render powerless the checks provided of one government or another, and will become as venal and oppressive as the government from which we separated.* [Emphasis added.]

The framers of the Constitution never intended the federal courts to deal in state matters. The Ninth and Tenth Amendments stated with clarity that they should not do so. Jefferson and others of the founders foresaw the evils which now plague us by an irresponsible arrogance of power exercised by the lowest division of the federal judiciary.

In the instant matter the evidence was so overwhelming that one must wonder how any person in his right mind could believe that the defendant did not knowingly, willingly, voluntarily, and understandingly enter the guilty plea.

CROCKETT, Justice (concurring with comments):

I am in agreement in principle with the comments of Chief Justice Ellett. I appreciate his effort in setting forth the action of the federal district court in this case as an officious and unjustified interference with the orderly processes of justice. In my opinion this is but another example of the all-too-frequently occurring failure of the federal court to exercise the judicial restraint which is necessary to the orderly and harmonious co-existence of our dual system of state and federal sovereignty and their respective court systems. It is obvious that this is a shoe which fits either foot and that the same responsibility rests upon the state judiciary. The fundamental proposition is that the main purpose of both is to serve the needs of society generally. The public, including those who are tempted to transgress the law, looks upon law enforcement and the court systems without too much discrimination as to what is the cause of what sometimes appears to be a confused morass in the processes of justice. It is further my opinion that the many cases of this character in recent years have been a significant factor in contributing to lower the esteem in which the courts and the processes of justice are held, which in turn has its effect upon the increase in crime and disrespect for law generally.